UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-80897-Civ-Ryskamp/Vitunac

WEST COAST LIFE INSURANCE
COMPANY,

     Plaintiff,

v.

LIFE BROKERAGE PARTNERS LLC,
*et al.*,

     Defendants.

_____/



FILED by _____ D.C.

AUG 1 1 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Order of Reference (DE 287), dated July 9, 2009, from United States District Judge Kenneth L. Ryskamp "for all pretrial matters, to take all necessary and proper action as required by law, and to submit a Report and Recommendation." Pending before the Court is corporate Defendant Park Venture Advisors' Motion to Dismiss the Amended Complaint (DE 199), filed April 14, 2009. Plaintiff filed a Response (DE 228) on May 4, 2009 (DE 221). Defendant filed a Reply (DE 246) on May 14, 2009. This matter is ripe for review.

## BACKGROUND

This is a civil action brought by Plaintiff, a life insurance company, against twenty-eight defendants for declaratory relief, damages, and the rescission of eight life insurance policies that Plaintiff claims were procured by fraudulent means. Plaintiff initially filed a Complaint (DE 1) on August 13, 2008. Plaintiff later filed an Amended Complaint (DE 140) on March 12, 2009, that joined three new parties, including Defendant Park Venture Advisors ("Defendant PVA"), and added five counts. Pursuant to the Court's Scheduling Order (DE 92), discovery in this case closed

August 3, 2009[1], and all dispositive motions must be filed by September 1, 2009.  Trial is presently set for January 11, 2010 (DE 93).

The Amended Complaint alleges that the defendants collaborated in a stranger-originated life insurance ("SOLI") scheme under which elderly applicant defendants were paid to consent to life insurance being taken out on their lives by and through other defendants, some of which established trusts to act as owners and beneficiaries of the life insurance policies so that entities with no relationship to the insured defendants could obtain rights and interests in the death benefits of the policies, all in violation of the law.  According to the Amended Complaint, the scheme was accomplished by (1) offering and paying the insureds monetary incentives to apply for coverage for which they otherwise would not as part of a "Granite Program" designed by Defendant Park Venture Advisors, (2) falsely stating that the proposed policies were not associated with STOLI and materially misrepresenting the insureds' financial condition in policy applications to secure multi-million dollar life insurance policies, (3) forming Texas common law trusts to be the owners and beneficiaries of those policies, and (4) designating a second Delaware trust, the LAT-VIII, as beneficiary of the Texas trusts that then could and did sell its beneficial interest to third-party investors.

The Amended Complaint alleges the following counts: declaratory judgment for rescission and/or voiding of the policies based on fraud, misrepresentations and lack of insurable interest (Counts 1, 2, and 3); civil conspiracy (Count 4); declaratory relief for payment of commission chargebacks (Count 5); breach of broker contracts (Count 6); negligence (Count 7); fraud (Count

---

[1] On July 30, 2009, the Court granted a limited extension of the discovery period for the sole purpose of allowing the parties until August 28, 2009 to complete the depositions of Park Venture Advisor's three experts (DE 309).

8); equitable relief (Count 9); declaratory judgment for voiding the Texas trusts (Count 10); conspiracy to violate Florida's Unfair Insurance Trade Practices Act (Count 11); violation of Florida's Viatical Settlement Act (Count 12); and violation of Florida's Securities and Investors Protection Act (Count 13).[2]

## PARTIES' CONTENTIONS

### Defendant PVA's Motions to Dismiss

Defendant PVA moves the Court to dismiss various counts of the Amended Complaint for failure to meet Rule 9(b)'s particularity requirement and/or for failure to state a claim. First, Defendant PVA argues that Count 8 for fraud fails to provide, with specificity, which individuals associated with Defendant made or directed others to make false statements or omissions. Defendant PVA maintains that the broad conclusory allegation in paragraph 138 stating that it made, and directed others to make, false statements and omissions directly contradicts prior paragraphs stating only that the individual insured defendants made such false statements and omissions. Similarly, Defendant PVA argues that Plaintiff's conspiracy claim, Count 4, and Plaintiff's claims for Florida statutory violations, Counts 11 and 12, fail to plead the underlying fraudulent conduct with specificity as required by Rule 9(b).

Next, Defendant PVA argues that each of the six counts against it improperly reincorporates preceding counts, commingles causes of action, and fails to identify specific defendants with specific counts and, thus, is a "shotgun complaint" that fails to set forth a short and plain statement showing Plaintiff is entitled to relief. Third, Defendant PVA argues that Plaintiff's claim for

---

[2] Count 13 of the Amended Complaint has been dismissed with prejudice (DE 216). Consequently, the Court will not address Defendant's argument pertaining to Count 13.

3

conspiracy to violate Florida's Unfair Insurance Trade Practices Act must be dismissed because that Act does not provide for a private right of action. Moreover, Defendant PVA argues that no cases support Plaintiff's contention that a third party, other than an insured, an insurer, or an agent, may be held liable under the FUITPA provision cited in the Amended Complaint. Defendant PVA argues that Plaintiff's other Florida statutory claim, Count 12, also fails to state a claim because Florida's Viatical Settlement Act does not cover any conduct described in the Amended Complaint, nor does any such conduct fit any of the Act's definitions or proscriptions.

Defendant PVA argues next that Count 4 for conspiracy fails to state a claim because Plaintiff fails to plead an underlying unlawful act in that Counts 11 and 12, alleging Florida statutory violations, fail as a matter of law and so cannot form the basis of the civil conspiracy. Lastly, Defendant PVA argues that Count 9 for equitable relief fails because this count incorporates by reference preceding causes of action, thereby demonstrating that Plaintiff has an adequate remedy at law. Further, to the extent Plaintiff's claim is for unjust enrichment, Defendant PVA argues that Count 9 fails to plead the necessary elements of such claim because the Amended Complaint is devoid of any allegation that Plaintiff conferred any benefit that Defendant PVA knowingly accepted.

Plaintiff's Response

In its Response, Plaintiff argues first that it has properly pled the elements of a conspiracy claim under Florida law, including the specific actions taken by Defendant PVA as part of the conspiracy. Specifically, Plaintiff argues that it alleges Defendant PVA to be the entity that designed and implemented the "Granite Program," under which incentive payments were created to encourage the individual insured and their broker defendants to misrepresent material facts to

4

Plaintiff in procuring the life insurance policies. Plaintiff argues that Defendant PVA's "derivative tort" argument fails because the "independent tort" theory of Florida law supports its claim for conspiracy to violate Florida's Unfair Insurance Trade Practices Act. Alternatively, Plaintiff argues that even if an underlying tort is needed, Plaintiff properly alleges underlying tort claims against Defendant PVA's co-conspirators, including conspiracy to violate and violations of Florida statutes, as well as conspiracy to commit fraud. As to the conspiracy to commit fraud, Plaintiff argues that Defendant PVA is liable "based on the fraudulent acts committed by other defendants in furtherance of this conspiracy, as they worked together to further their scheme."

Next, Plaintiff argues that its claim for violation of Florida's Viatical Settlement Act, Count 12, withstands dismissal because under the terms of the trust agreements forming the Texas trusts, "the purpose of the Life Accumulation Trust VIII is to hold and transfer the Beneficial Interests in the Policies."[3] Hence, Plaintiff argues that by "alleging that the Life Accumulation Trust acts as a related provider trust, [Plaintiff] has stated a valid claim under the FVSA." Lastly, Plaintiff argues its claim for equitable relief is valid because Plaintiff sufficiently pled the elements for unjust enrichment by alleging that it conferred a benefit on all of the defendants by issuing the insurance policies, which all defendants voluntarily accepted, and it would be inequitable for them to have had such benefit, which was based on misrepresentations made in the applications. Plaintiff argues that it would be premature to dismiss its equitable claim without first determining whether the insurance policies should be rescinded because a plaintiff can maintain an unjust enrichment claim even if the complaint otherwise alleges an adequate remedy at law.

---

[3] The Life Accumulation Trust VIII is a Delaware statutory trust that is named as a co-defendant in this action. Plaintiff alleges that the Life Accumulation Trust is "the beneficiary of the Life Insurance Trusts at issue in this lawsuit." Amend. Compl. ¶ 16.

## Defendant PVA's Reply

In its Reply, Defendant PVA argues that Plaintiff's Response improperly refers to two outside documents, a sworn statement by individual co-defendant Rosalie Chilow and a Florida Office of Insurance Regulation report, that the Court should exclude in deciding whether to dismiss. Defendant PVA argues that Plaintiff essentially concedes that Count 8 should be dismissed by not responding to Defendant PVA's arguments challenging this count for failure to plead fraud with specificity. Rather than address these arguments, Plaintiff "backtracks to what itv iews [sic] as safe harbor that it is not alleging fraud but rather conspiracy to commit fraud."

Defendant PVA argues that Plaintiff's contention that it can have a conspiracy claim based on violation of Florida's Unfair Insurance Trade Practices Act is illogical and unsupported by any citation to authority. Defendant PVA maintains it is not an insurer and is not subject to this Act, a statute regulating the insurance industry. Defendant PVA argues further that Plaintiff fails to allege that Defendant PVA "knew of or acquiesced and approved of the alleged misrepresentations" as is required to sufficiently plead a conspiracy to defraud. As to Plaintiff's allegations about the "Granite Program," Defendant PVA argues that such allegations merely assert that it provided funding to buy life insurance policies, which is proper unless the policies are obtained by false means. Thus, to state a valid claim against Defendant PVA, Plaintiff would have to allege with specificity that Defendant PVA knew the policies were obtained by providing false information to Plaintiff. Lastly, Defendant PVA argues that while Florida recognizes an independent conspiracy claim, it is limited to situations where conspirators are all in a similar role and take similar action to harm the victim of the concerted action. Such is not the case here, according to Defendant PVA, and thus, Plaintiff is limited to the traditional conspiracy claim requiring an underlying tort.

6

DISCUSSION

*I.   Standard of Review*

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In other words, factual allegations must "be enough to raise a right to relief above a speculative level." Id. In deciding whether to dismiss, the Court must accept as true all allegations of the complaint and construe those allegations in the light most favorable to the plaintiff. Hoffend v. Villa, 261 F.3d 1148, 1150 (11th Cir. 2001); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is "exceedingly low." Quality Foods de Centro America, S.A. v. Latin American Agribusiness Devel., 711 F.2d 989, 995 (11th Cir.1983). Regardless of the facts alleged, a court may dismiss a complaint on a dispositive issue of law. Marshall Co. Bd. of Educ. v. Marshall Co. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard announced by Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). In order to give substance to a defendant's right to fair notice, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556.

7

II.   *Plaintiff's Incorporation of Prior Allegations Into Each Successive Count*

Defendant PVA argues that Plaintiff's improper "shotgun complaint" warrants dismissal. The typical shotgun complaint has "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, LLC v. Spear, Leeds & Kellogg, 305 F.3d 1293, 1295, n.9 (11th Cir. 2002).   The Eleventh Circuit repeatedly condemns "shotgun pleadings" as imposing "a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts." U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006); Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979 & n.54 (11th Cir.2008) (collecting cases).

The Amended Complaint falls within the category of shotgun pleadings roundly condemned by the Eleventh Circuit.   It has 164 paragraphs spanning 41 pages and, beginning with the first count, improperly incorporates and reincorporates previous paragraphs into each successive count. Although it is not improper to incorporate prior general factual allegations into successive counts, it is improper to incorporate prior allegations in a count when those prior allegations have no relation to that count.   Nevertheless, this is not a case where it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir.1996). As such and in light of the present stage of the proceedings, the Court will carefully examine each cause of action challenged by Defendant PVA for legal sufficiency, viewing all factual allegations in the Amended Complaint in the light most favorable to Plaintiff, as the Court must at this stage.

III.   *Defendant PVA's Motion to Dismiss Counts 4, 8, 9, and 11-12*

As a threshold matter, the Court agrees with Defendant PVA that Plaintiff's reliance upon documents outside of the pleadings in its Response is improper at this motion to dismiss stage. Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1328 n.6 (11th Cir. 2006) ("[a] court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss[,]" however "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading" for purposes of the motion to dismiss). In issuing this Report and Recommendation, the Court has considered only the allegations within the Complaint and those documents that are central to plaintiff's claims, i.e., the insurance policies and policy applications. The Court has not considered co-defendant Rosalie Chilow's sworn statement or the Florida Office of Insurance Regulation report, both of which constitute matters outside the pleadings.

Count 8 asserts a common law claim of fraud. Defendant PVA argues that this count must be dismissed for failure to satisfy Rule 9(b)'s particularity requirement. Plaintiff did not respond to this argument. Claims for fraud are subject to heightened pleading requirements. "In alleging fraud ... a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The particularity rule serves an important purpose in fraud actions by alerting defendants to the "precise misconduct with which they are charged" and protecting defendants "against spurious charges of immoral and fraudulent behavior." Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988); see also Leisure Founders, Inc. V. CUC Int'l Inc., 833 F.Supp. 1562, 1575 (S.D. Fla. 1993) (where "multiple parties are charged with fraud, the complaint must distinguish among defendants and specify their respective roles in the fraud ... [t]he allegations

9

must alert defendants to the precise misconduct with which they are charged"). The application of Rule 9(b), however, "must not abrogate the concept of notice pleading." Durham, 847 F.2d at 1511.

To comply with Rule 9(b), the Eleventh Circuit requires a complaint to set forth "'(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc ., 116 F.3d 1364, 1371 (11th Cir. 1997); see also Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006).

With respect to Defendant PVA, Plaintiff's fraud claim does not meet the above requirements. Plaintiff's fraud claim is based on alleged material misrepresentations contained in policy applications submitted to Plaintiff for procurement of the insurance policies in issue. The Amended Complaint identifies specific misrepresentations made by the individual non-policy owner insured defendants and their respective broker defendants, i.e. as to the insureds, alleged misrepresentations regarding their financial condition and in response to question 10 of each policy application, and as to the individual broker defendants, their responses to questions 6 and 7 of the respective agent reports. Amend. Compl. ¶¶ 67-84. For these and other reasons described in a prior Report and Recommendation (DE 315), which the Court incorporates herein by reference, this Court there concluded that Plaintiff has satisfied Rule 9(b)'s heightened pleading requirements as to its claim for fraud against the insured and broker defendants. The same is not true of

10

Plaintiff's allegations of fraud against Defendant PVA.

The Amended Complaint alleges that Defendant PVA "made, or directed others to make false statements or omissions of material fact, as set out with particularity throughout this Complaint, to [Plaintiff] in connection with the procurement of the policies" and that Defendant PVA "made, or directed others to make, these false statements and/or omissions of material fact either willfully with intent to deceive or in reckless disregard of their falsity or materiality" with the intent that Plaintiff rely on such false statements. Amend. Compl. ¶¶ 138-139. Contrary to its assertion that the false statements or material omissions are "set out with particularity throughout this Complaint," the Amended Complaint contains no other specific factual allegations to support its broad, conclusory claims of fraud against Defendant PVA.

For instance, the Amended Complaint does not allege which person or persons associated with Defendant PVA is or are responsible for making or directing others to make false statements or misrepresentations. In addition to the insufficient particularity as to precise statements made, the Amended Complaint is silent as to when Defendant PVA made, or directed others to make, the alleged false statements or misrepresentations. As part of the general allegations, the Amended Complaint alleges that Defendant PVA's "Granite Program involved offering the Insured Defendants a monetary incentive or inducement to apply for coverage for which they otherwise would not apply" and that these payments by Defendant "created an incentive for the Insured Defendants and the Broker to misrepresent material facts" to Plaintiff. Amend. Compl. ¶ 57. Noticeably absent from the Amended Complaint, however, is any allegation that Defendant PVA actually made false statements or misrepresentations to Plaintiff, or that Defendant PVA instructed any of its co-defendant insured or broker defendants to make false statements or misrepresentations

11

in the insurance policy applications.

In sum, the Amended Complaint describes an alleged elaborate scheme by all twenty-eight defendants to defraud Plaintiff by submitting false statements and making misrepresentations, but fails to provide the next link in Defendant PVA's alleged liability for common law fraud by specifically alleging what false statements or omissions were made by Defendant PVA or, alternatively, what specific direction Defendant PVA gave to others making the alleged false statements. Instead, Plaintiff portrays the scheme and then summarily and vaguely alleges that Defendant PVA made, or directed others to make, false statements in the insurance applications. Such conclusory allegation, without more, fails to alert Defendant PVA to the precise misconduct with which it is charged and, thus, Count 8 for fraud must be dismissed for failure to satisfy Rule 9(b)'s heightened pleading requirements.

Count 4 asserts a claim of civil conspiracy. To successfully allege a civil conspiracy, a plaintiff must allege: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of acts done under the conspiracy. Charles v. Florida Foreclosure Placement Ctr., LLC, 988 So.2d 1157, 1159-60 (Fla. 3d DCA 2008) (citations omitted). "A civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1067 (11th Cir. 2007). Thus, "[a] claim that is found not to be actionable cannot form the basis for a conspiracy claim." Id.

A conspirator "need not take part in the planning, inception, or successful conclusion of a conspiracy[;]" the conspirator "need only know of the scheme and assist in it in some way to be

12

held responsible for all of the acts of his coconspirators." Donofrio v. Matassini, 503 So.2d 1278, 1281 (Fla. 2d DCA 1987). Each act done in pursuit of a conspiracy by one of several conspirators is an act for which each conspirator is jointly and severally liable. Nicholson v. Kellin, 481 So.2d 931, 935 (Fla. 5th DCA 1985); see also Pafumi v. Davidson, 2007 WL 1729969, at *4 (S.D. Fla. 2007) (finding it unnecessary for each defendant charged with conspiracy to be accused of making misrepresentations as long as at least one co-conspirator committed such an overt act).

Here, the Court finds for reasons discussed more fully *infra* that Plaintiff's claims for Florida statutory violations, Counts 11 and 12, fail to state claims for which relief can be granted and, thus, these counts must be dismissed. Accordingly, Counts 11 and 12 cannot form the basis for Plaintiff's conspiracy count. Likewise, the Court has found for reasons discussed above that Count 8 for fraud must be dismissed against Defendant PVA for failure to plead such fraud with particularity. However, though Plaintiff's substantive fraud count against Defendant fails, the conspiracy count against Defendant PVA may withstand dismissal if Plaintiff is found to have satisfactorily alleged that Defendant PVA (1) agreed with other defendants to defraud Plaintiff, and (2) knew of and assisted the conspiracy. See Martinez, 480 F.3d at 1067-68; Donofrio, 503 So.2d at 1281. The Court concludes that Plaintiff has not been successful in this regard.

Plaintiff's conspiracy count alleges that "[s]ome or all of Defendants worked together to devise and execute an extensive scheme to solicit elderly insureds, procure life insurance policies well in excess of said insureds' net worth, and transfer the insureds in [sic] of those policies to various trusts with an intent to avoid state insurable interest laws" and that "Defendants engaged in multiple overt acts in furtherance of this conspiracy, including misrepresenting information on insurance applications, establishing Trusts to assume ownership of the policies, and working with

13

the unnamed financers to secure and pay premium payments to [Plaintiff] through third-party sources." Id. ¶¶ 120-121. Defendant PVA is not specifically identified in the conspiracy count and the Amended Complaint does not allege at all, let alone with sufficient particularity, that Defendant PVA ever joined in a conspiracy, or had knowledge of the conspiracy, involving any other defendants, beyond a conclusory wide-ranging allegation that "Defendants consist of multiple parties, not all of whom necessarily had knowledge of the entire scheme or plan herein, but all of whom committed acts in furtherance of the overall scheme known by the Brokers and certain others." Amend. Compl. ¶ 119.

Plaintiff fails to specifically allege that Defendant PVA knew of and assisted in the conspiracy. As part of the Amended Complaint's general allegations, Plaintiff alleges that Defendant PVA "designed and/or implemented" the "Granite Program," described as a "STOLI scheme that violates the law," which "involved offering the Insured Defendants a monetary incentive or inducement to apply for coverage for which they otherwise would not apply." Amend. Compl. ¶¶ 57-58. Further, Plaintiff alleges that such payments "created an incentive for the Insured Defendants and the Broker to misrepresent material facts to [Plaintiff] so that large face amount policies would be issued, resulting in higher incentive payments to the insured and higher commissions to the brokers" and that Defendant PVA "received compensation for its role in the transactions." Amend. Compl. ¶ 57. Additionally, Defendant PVA is alleged to have "established a number of different trusts through which the rights and interests to the policies' death benefits would pass." Amend. Compl. ¶ 58. These general allegations by Plaintiff fail to state a claim against Defendant PVA for conspiracy to defraud Plaintiff. Even assuming as true Plaintiff's allegations about Defendant PVA's Granite Program, there is nothing illegal or improper about

14

creating and implementing a program that pays individual applicants to apply for life insurance policies. To validly state a claim against Defendant PVA for conspiracy to defraud, Plaintiff would have had to describe with specificity that Defendant PVA knew that the insurance policies at issue were obtained by providing false statements to Plaintiff. Plaintiff has not done so. This failure on Plaintiff's part, combined with Plaintiff's failure to satisfactorily allege that Defendant PVA agreed with other defendants to defraud Plaintiff, amount to fatal defects in Plaintiff's conspiracy claim against Defendant PVA. Thus, Count 4 must be dismissed for failure to plead conspiracy to defraud with particularity as to Defendant PVA.

Plaintiff attempts to save its conspiracy claim by arguing that it does not have to allege an underlying actionable tort because it has sufficiently alleged an independent conspiracy theory under Florida law. Although the Florida cases cited by Plaintiff recognize an independent conspiracy claim without the need for an underlying tort, such cases have done so only in narrow circumstances where a plaintiff shows a "peculiar power of coercion possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess." Walters v. Blankenship, 931 So.2d 137, 140 (Fla. 5th DCA 2006) (owners of four condominium units stated viable conspiracy claim against a group of other condominium owners who simultaneously posted "for sale by owner" signs to depress the units' selling price); see also Churruca v. Miami Jai-Alai, Inc., 353 So.2d 547 (Fla. 1977) (jai-alai players stated a valid conspiracy claim against a group of jai-alai frontons who allegedly conspired to prevent those players from obtaining employment in their respective arenas); Snipes v. West Flagler Kennel Club, Inc., 105 So.2d 164 (Fla. 1958) (a greyhound racer stated a valid conspiracy claim against a group of five kennel clubs who denied him privileges at their respective tracks and intimidated other kennel clubs in the state to similarly

boycott him); Margolin v. Morton F. Plant Hospital Ass'n, Inc., 342 So.2d 1090 (Fla. 2d DCA 1977) (surgeon stated a valid conspiracy claim where the alleged concerted refusal by all of the staff anesthesiologists at a particular hospital to refuse to anesthetize his patients prevented him from practicing his profession). What all these cases share in common is factual allegations against conspirators who are all in a similar role and who all take similar action to harm the victim of the concerted action. Such is not the case here. Plaintiff's allegations describe a conspiracy by multiple defendants in different roles who all are alleged to have taken different actions to cause harm to Plaintiff. The Court agrees with Defendant PVA that Plaintiff is limited to the traditional conspiracy claim requiring an underlying tort. As Plaintiff fails to state a claim for any actionable underlying tort or wrong, Plaintiff's conspiracy claim against Defendant PVA must be dismissed.

Count 9 asserts a claim for equitable relief. As an initial point, equitable relief is a remedy and not a cause of action. The Court's review of Plaintiff's claim for "equitable relief" shows that it is actually a claim for unjust enrichment, also known as a contract implied in law. Plaintiff concedes this point. The elements of unjust enrichment are that (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Florida, 667 So.2d 876, 879 (Fla. 3d DCA 1996). "The benefit conferred must be a direct benefit." Huntsman Packaging Corp. v. Kerry Packaging Corp., 992 F.Supp. 1439, 1446.

Defendant PVA argues that Plaintiff's unjust enrichment claim must be dismissed for failure to plead the requisite elements. The Amended Complaint alleges generally that "Defendants

16

have been unjustly enriched by their actions, including without limitation, in soliciting, applying for, placing, and accepting insurance policies that were void *ab initio*, by receiving insurance coverage, by receiving enhancement of assets through insurance values, and through receipt of commission payments." Amend. Compl. ¶ 145. Unlike with the broker defendants, to whom Plaintiff allegedly "paid over $1,000,000 in commissions" for the policies issued, Amend. Compl. ¶ 66, the Amended Complaint is devoid of any allegation that Plaintiff conferred any direct benefit on Defendant PVA. The closest the Amended Complaint comes to addressing any direct benefit conferred on Defendant PVA is its passive voice allegation that Defendant PVA "received compensation for its role in the transactions." Amend. Compl. ¶ 57. Significantly, this general allegation is silent as to who directly paid out such compensation and no other allegation in the Amended Complaint otherwise explains what direct benefit Plaintiff conferred on Defendant PVA. Plaintiff argues generally that it conferred a benefit on all the defendants in this case by issuing the policies, however the only defendants who directly benefit from the issuance of the policies are the policy owners and beneficiaries and Defendant PVA falls within neither category. Thus, Count 9 must be dismissed for failure to state a claim against Defendant PVA.

Count 11 asserts a claim for conspiracy to violate Florida's Unfair Insurance Trade Practices Act (FUITPA). Defendant PVA argues that Count 11 should be dismissed for failure to state a claim because the FUITPA does not create a private cause of action. Plaintiff failed to respond to Defendant PVA's motion to dismiss Count 11, which alone constitutes grounds for the Court to dismiss this count by default. See S.D. Fla. L.R. 7.1.A. Notwithstanding Plaintiff's failure in this regard, the Court proceeds on the merits and concludes that Count 11 fails to state a legally sufficient claim for relief.

The stated purpose of FUITPA is "to regulate trade practices relating to the business of insurance in acco rdance with the intent of Congress ... by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." Section 626.9541(1)(h) of the FUITPA, upon which Plaintiff relies, proscribes rebating by insurers or their agents as an unfair method of competition. Fla. Stat. § 626.941(1)(h); Chicago Title Ins. Co. v. Butler, 770 So. 2d 1210, 1211 n.3 (Fla. 2000). More specifically, the provision focuses on unlawful rebates associated with an insurance contract and proscribes the giving or providing of consideration as inducement to enter an insurance contract. Fla. Stat. § 626.941(1)(h). Significantly, however, the FUITPA does not provide any civil remedy nor does it create a private cause of action for violations of Section 626.9541(1)(h).[4]

As a regulatory statute that is designed to protect the public welfare from unscrupulous insurance practices, the FUITPA cannot be construed to establish civil liability. Buell v. Direct General Ins. Agency, Inc., 488 F.Supp.2d 1215, 1217 (M.D. Fla. 2007), aff'd 267 Fed. Appx. 907, 909 (11th Cir. 2008) (citing Murthy v. N. Sinha Corp., 644 So.2d 983, 986 (Fla.1994) (observing that a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing civil liability). Plaintiff's attempt to assert a "conspiracy" to violate the FUITPA is unavailing because Plaintiff "may not evade the Florida legislature's decision to withhold a statutory cause of action for

---

[4] Count 11 of the Amended Complaint refers to a report released by Florida's Office of Insurance Regulation earlier this year and alleges that the report finds "'a transaction where seniors are offered bonus money for signing on the scheme or are given cars and cash' violates section 626.9541(h)." Amend. Compl. ¶ 157. This allegation does not change the Court's analysis. Assuming the statement to be true, as the Court must, such statement would, at most, arguably support an action by Florida's Office of Insurance Regulation against some or all of the defendants, but would not and cannot create a private cause of action against the same.

violations of the pertinent provisions of FUITPA by asserting common law claims based on such

violations." Buell, 267 Fed. Appx. at 909. Thus, Count 11 must be dismissed.

Lastly, Count 12 asserts a claim for violating Florida's Viatical Settlement Act (FVSA).

Defendant PVA argues that Count 12 fails to state a claim because the conduct alleged in the

Amended Complaint does not meet the Act's definitions. The Court agrees. Under the FVSA, it

is unlawful for any person:

> "(a) To knowingly enter into, broker, or otherwise deal in a viatical settlement contract the subject of which is a life insurance policy, knowing that the policy was obtained by presenting materially false information concerning any fact material to the policy or by concealing, for the purpose of misleading another, information concerning any fact material to the policy, where the viator or the viator's agent intended to defraud the policy's issuer.
>
> . . .
>
> (d) To knowingly or intentionally facilitate the change of state of residency of a viator to avoid the provisions of this chapter."

Fla. Stat. § 626.99275(1)(a), (d).

The Amended Complaint alleges in a conclusory fashion that "[t]he transactions entered

into by Defendants constitute viatical settlements as defined by Section 626.9911 of the [FVSA]."

Amend. Compl. ¶ 159. A review of section 626.911, which provides definitions for terms in the

FVSA, refutes this allegation. Specifically, a "viatical settlement contract" is defined as "a written

agreement entered into between a viatical settlement provider, or its related provider trust, and a

viator" that "includes an agreement to transfer ownership or change the beneficiary designation of

a life insurance policy at a later date ..." Fla. Stat. § 626.911(10). A "viator" is defined as "the

owner of a life insurance policy." Fla. Stat. § 626.911(14). The viatical settlement may or may not

be facilitated through a "viatical settlement broker" defined as "a person who, in behalf of a viator

and for a fee, commission, or other valuable consideration, offers or attempts to negotiated viatical

19

settlement contracts between a viator resident in this state and one or more viatical settlement providers." Fla. Stat. § 626.911(9).

The Amended Complaint alleges that the defendant Texas trusts, all of which are organized under Texas law, own the insurance policies at issue. Amend. Compl. ¶ ¶ 17-24. The Amended Complaint does not allege that the defendant Texas trusts ever sold any of the policies or changed the beneficiary of any of the policies and, thus, Plaintiff has failed to plead that any "viatical settlement" occurred. Furthermore, as the life insurance policy owners, the defendant Texas trusts are non-resident viators to which the FVSA expressly does not apply. Martinez, 480 F.3d at 1058-59 (dismissing claim for violation of FVSA because viators were not Florida residents). Plaintiff does not dispute this finding in its Response and argues only that another defendant Life Accumulation Trust acts as a "related provider trust" as defined in the Act and, as such, a valid claim under the FVSA has been pled. This argument misses the mark because, even if the Life Accumulation Trust qualified as a related provider trust, a "viatical settlement contract" requires two parties, one being a Florida resident viator. The Amended Complaint simply fails to state a claim for a violation of the FVSA and Count 12 must be dismissed.

RECOMMENDATION

Based on the foregoing, this Court RECOMMENDS to the District Court that Defendant Park Venture Advisors' Motion to Dismiss the Amended Complaint (DE 199) be GRANTED. Defendant Park Venture Advisors' Motion should be granted as to Counts 4, 8, 9, 11 and 12 of the Amended Complaint. Based on Plaintiff's failure to sufficiently state any valid claims against Defendant Park Venture Advisors, this Court further RECOMMENDS that Defendant Park Venture Advisors be dismissed from this case.

20

## NOTICE OF RIGHT TO OBJECT

Any party may serve and file written objections to this Report and Recommendation with the Honorable Kenneth L. Ryskamp within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 11 day of August, 2009.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Kenneth L. Ryskamp
All Counsel of Record

21